A. T. MOORE, Treasurer of Pitt County, N. C., v. FIDELITY AND CASUALTY COMPANY OF NEW YORK, GURNEY P. HOOD, Commissioner of Banks, et al.

(Filed 12 December, 1934.)

1. **Limitation of Actions B g—Suit for reformation held instituted as of date of amendment of complaint to state cause of action therefor.**

Defendant surety company issued its bonds securing county funds on deposit in a bank. Upon the loss of the funds through the insolvency of the bank, suit was instituted on the bonds. Part of the county funds were on general deposit and part were represented by certificates of deposit, and defendant surety company set up the defense that the bonds

contained a clause which provided that funds represented by certificates of deposit should not be covered by the bonds. Thereafter plaintiff was allowed to amend his complaint so as to allege that the clause exempting certificates of deposit was inserted through the mutual mistake of the parties and that the clause should be eliminated therefrom: *Held,* suit for reformation of the bonds was instituted as of the date of the amendment of the complaint.

**2. Reformation of Instruments A a—**

Equity has the power to reform instruments for mutual mistake of the parties, or for mistake of one party induced by the fraud of the other, in order to make the instruments express the true intent of the parties.

**3. Limitation of Actions B b—**

A cause of action for reformation of an instrument for fraud or mistake accrues when the fraud or mistake is discovered, or when it should have been discovered in the exercise of due diligence.

**4. Same—Cause of action for reformation of bonds held barred by three-year statute under facts of this case.**

Bonds securing county funds on deposit in a bank contained a clause stipulating in unequivocal terms that the bonds should not cover county funds represented by certificates of deposit. The county treasurer brought suit on the bonds to recover funds of the county on general deposit and funds represented by certificates of deposit, and sought to have the bonds reformed by eliminating the clause exempting certificates of deposit because of the mutual mistake of the parties. Defendant surety company pleaded the three-year statute of limitations, C. S., 441 (9), it appearing that the action was begun some five years after the delivery of the bonds. Plaintiff alleged in his reply that the clause exempting certificates of deposit was not discovered until after the failure of the bank in which the county funds were deposited: *Held,* the actual time of the discovery of the alleged mistake is not determinative, but the cause of action for reformation of the bonds accrued when the mistake should have been discovered by plaintiff in the exercise of due diligence, and plaintiff being an educated man, and there being no evidence of any effort to conceal the plain language of the bonds or to prevent plaintiff from reading them, plaintiff's cause of action was barred by the statute.

CIVIL ACTION, before *Daniels, J.,* at First May Term, 1934, of PITT.

Plaintiff alleged that he was the treasurer of Pitt County, and that on or about 5 May, 1927, the defendant Fidelity and Casualty Company, through its agent in Pitt County, North Carolina, executed and delivered its Bond No. 1159556, in the sum of $10,000, in favor of A. T. Moore, treasurer of Pitt County, and the term of said bond began 5 May, 1927. On or about 20 February, 1928, the said defendant issued to the said treasurer Bond No. 1162964 in the penal sum of $6,000, and the term of said bond began on 20 February, 1928. It was further alleged that the purpose of securing said bonds was to protect public funds of Pitt County in the hands of said Moore, treasurer, and de-

posited by said treasurer in the Citizens Bank of Farmville, North Carolina. Section 2 in each of said bonds was as follows: "The company shall not be liable hereunder for the payment of any sum due upon any certificate of deposit issued by the bank." The Citizens Bank of Farmville failed on 8 December, 1930, and at the time of such failure the plaintiff, as treasurer, had on deposit in said bank to his credit, subject to check, the sum of $4,000, and on Certificate of Deposit No. 2432, dated 19 June, 1930, and due 19 September, 1930, $15,541.50. The defendant filed an answer, pleading as a defense the provisions of said bond exempting liability for certificates of deposit. Thereafter, on or about 14 October, 1933, pursuant to an order of court, the plaintiff amended his complaint, alleging, among other things, that said bonds were intended to cover all deposits held by the plaintiff treasurer in the Bank of Farmville, and "that the execution and delivery of the bonds sued upon, with said provision therein, was a mutual mistake which was understood by the defendant company, said company knowing the requirements of the plaintiff, and that it understood that it was the intention and purpose of said bonds to protect all amounts so deposited with the Citizens Bank;  . . .  and that the delivery of the bonds sued upon was a mistake which was mutual, and in fairness, in law, equity, and good conscience, should be corrected to comply with the conditions established by this plaintiff before any deposits were made, and that section two should be eliminated therefrom."

The defendant interposed the plea of the statute of limitations to the cause of action for correction or reformation set up in the amended complaint. At the trial it was admitted, and the court found as a fact, that the Citizens Bank of Farmville suspended business on 8 December, 1930, and at the time of such suspension the plaintiff had on deposit therein $4,000, subject to check, and $15,833.33 evidenced by certificate or certificates of deposit. The court further found as a fact that summons in this action was issued and complaint filed on 5 December, 1931, and that the amendment to the complaint was filed on or about 14 October, 1933, pursuant to an order of court. The plaintiff offered certain oral evidence that other depository bonds had been furnished carrying full coverage and without a clause similar to the one contained in the bonds in controversy; and, further, that the agent of the surety company was told at the time the bonds were issued that the plaintiff treasurer desired full coverage upon all amounts in the bank. The trial judge excluded all such evidence, and upon the facts found by him entered judgment that the plaintiff recover of the surety company the amount of the general deposit, and that he recover of Commissioner of Banks the amount represented by the certificates of deposit.

From judgment so rendered plaintiff appealed.

*J. B. James for plaintiff.*
*Ruark & Ruark for defendants.*

BROGDEN, J.　The controlling questions of law are these:

1. When was the action for the reformation and correction of the indemnity contracts begun?

2. Is such cause of action barred by the statute of limitations?

The depository bonds involved in this litigation contain a clause worded as follows: "The company shall not be liable hereunder for the payment of any sum due upon any certificate of deposit issued by the bank." It was admitted, and found as a fact by the trial judge, that $15,833.33, in the bank at the time of closing to the credit of plaintiff treasurer, was evidenced by certificate or certificates of deposit, and therefore not within the protection of the bond so long as the language above quoted constituted an essential and material part thereof.

"It is accepted doctrine that when the parties have bargained together touching a contract of insurance, and reached an agreement, and in carrying out, or in the effort to carry out, the agreement, a formal written policy is delivered and accepted, the written policy, while it remains unaltered, will constitute the contract between the parties, and all prior parol agreements will be merged in the written instrument; nor will evidence be received of prior parol inducements and assurances to contradict or vary the written policy while it so stands as embodying the contract between the parties. Like other contracts, it may be set aside or corrected for fraud or for mutual mistake; but, until this is done, the written policy is conclusively presumed to express the contract it purports to contain." *Floars v. Ins. Co.,* 144 N. C., 232, 56 S. E., 915. See, also, *Clements v. Ins. Co.,* 155 N. C., 57, 70 S. E., 1076; *Wilson v. Ins. Co.,* 155 N. C., 173, 71 S. E., 79; *Burton v. Ins. Co.,* 198 N. C., 498, 152 S. E., 396; *Welsh v. Brotherhood,* 200 N. C., 184, 156 S. E., 539.

Doubtless realizing that the foregoing principles of law blocked the path of recovery, the plaintiff amended his complaint on 14 October, 1933, and alleged that the delivery of the depository bonds with the restrictive clause therein was the result of mutual mistake, and that such bond should be reformed and said clause stricken therefrom. Therefore, the action for reformation was begun on said date. See *Jones v. Vanstory,* 200 N. C., 582, 157 S. E., 867.

The power of a court of equity to reform contracts for mistake has been recognized and applied for so long in this jurisdiction that such power may now be deemed to be thoroughly built into the structure and fabric of our law. Thus, in the *Welsh case, supra,* the Court spoke as follows: "But the reformation is subject to the same rules of law as are

applicable to all other instruments in writing. It must be alleged and proven that the instrument sought to be corrected failed to express the real agreement or transaction because of mistake common to both parties, or because of mistake of one party and fraud or inequitable conduct of the other."

The defendant pleaded the statute of limitations to the amended complaint upon the theory that the bonds were delivered to the plaintiff 29 May, 1927, and on 25 February, 1928, and that as the amended complaint filed in October, 1933, first set up a cause of action for reformation that such cause of action was barred by C. S., 441, subsec. 9, in that more 'than three years had elapsed from the discovery of fraud. The plaintiff asserted that he did not discover the fraud or mistake until he read the bonds after the bank failed, and then for the first time discovered the presence of the restrictive clause, and that he had assumed that the bonds in litigation were similar to other depository bonds which he had been taking for a period of years, and which provided for full coverage. However, actual discovery of the fraud or mistake is not always conclusive. The correct principle as held and pronounced by this Court was stated in *Latham v. Latham,* 184 N. C., 55, 113 S. E., 623, in the following words: "We do not hold, as appellant contends, that the statute begins to run from the actual discovery of the fraud, absolutely and regardless of any negligence or laches of the party aggrieved. A man should not be allowed to close his eyes to facts observable by ordinary attention and maintain for his own advantage the position of ignorance. Such principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case, a man's failure to note facts must be imputed to him for knowledge, and in the absence of some actual effort to conceal a fraud or some of the essential facts embraced in the inquiry, we think the correct interpretation of the statute should be that the cause of action shall be deemed to have accrued from the time the fraud was known, or should have been discovered in the exercise of ordinary diligence."

When the bonds were delivered in 1927 and in 1928 the clause limiting liability to general deposits and excluding certificates of deposit was plainly written in the instrument in clear and unequivocal words. The plaintiff had been a student at the University of North Carolina and was an able and experienced business man, and, therefore, even a casual reading of the instruments at the time they were delivered would have disclosed the limitation of liability. There was no evidence of any effort to conceal the plain wording of the instruments or to prevent the plain-

tiff from reading them or of making such examination of the contents as he might deem desirable and advisable. The cause of action for mistake appeared in the case upon the filing of the amended complaint on 14 October, 1933, and on said date the statute of limitations had already put such cause of action to death.

Affirmed.