SAMMY G. HIATT v. BURLINGTON INDUSTRIES, INC.

No. 8118SC268

(Filed 2 February 1982)

**Limitation of Actions § 8.2; Patents § 1— fraud in obtaining patent right—statute of limitations applicable—summary judgment proper**

In an action in which plaintiff alleged defendant defrauded him by paying a grossly inadequate consideration for an invention used in defendant's mill and by obtaining a patent for that invention in defendant's name, summary judgment for defendant was proper. The uncontraverted facts established that more than three years before he filed the lawsuit plaintiff knew or with due diligence should have known the facts constituting the alleged fraud, and under G.S. 1-52(9) actions based on fraud or mistake are governed by a three year statute of limitations.

APPEAL by plaintiff from *Collier, Judge.* Judgment entered 19 January 1981, in Superior Court, GUILFORD County. Heard in the Court of Appeals 19 October 1981.

In August 1980, plaintiff filed complaint against defendant and alleged the following matters: In 1963, while employed by defendant, plaintiff "on his own time" invented an apparatus for liquid treatment of textile fabric and process (endless strand dyeing apparatus). Plaintiff informed his superiors of his invention, and they immediately became interested in it. Defendant built an apparatus which conformed to plaintiff's invention and later began dyeing cloth on it. The complaint continued:

. . . .

VI. In 1964, plaintiff was given some papers to sign by his employer. The papers were not explained to plaintiff except defendant told plaintiff they were applying for a patent.

VII. In late 1964, a patent was applied for in the name of the plaintiff and others named. The patent was granted in 1974 with plaintiff being the sole inventor as U.S. Patent No. 3,820,950.

VIII. On December 9, 1964, plaintiff signed . . . [a document by which he assigned the full and exclusive right to the invention to defendant.] The One ($1.00) Dollar consideration recited was not actually paid. Plaintiff was simply told by defendant to sign the paper. Plaintiff did not read the paper and did not know the purported effect thereof until he consulted a lawyer concerning his patent in approximately July, 1980.

IX. The defendant defrauded the plaintiff by paying a grossly inadequate consideration for plaintiff's invention and the defendant exercised undue influence over the plaintiff in obtaining the plaintiff's signature on Exhibit A. The defendant knew that the patent had great commercial value and that the plaintiff was relying on the defendant to treat him fairly. The defendant breached the confidence reposed in defendant by plaintiff and thereby defrauded plaintiff through the exercise of undue influence over the plaintiff.

X. The plaintiff relied on the defendant's statements that the defendant was applying for a patent on plaintiff's invention. Defendant's statements were materially false, inadequate and misleading and plaintiff relied thereon to his detriment.

XI. Plaintiff was never advised by defendant that he was giving, or even being asked to give, his patent to defendant, and plaintiff would not have done so had he been asked.

XII. Plaintiff is informed and believes that defendant has enjoyed considerable savings and commercial success from plaintiff's invention. Plaintiff is informed and believes

that defendant has licensed others to utilize plaintiff's patent and has received considerable income therefrom.

. . . .

As a second count in his complaint, plaintiff claimed that part of the assignment referred to in the first count (assigning future inventions) was too broad and constituted a "patent misuse." Plaintiff sought, *inter alia*, rescission of the assignment, restitution for all sums earned by defendant from plaintiff's invention, including savings derived by defendant from the invention, and assignment to him of all foreign patents or applications of plaintiff's invention.

By its answer, defendant denied the essential allegations of plaintiff's complaint and, among other things, pleaded in bar the statute of limitations, estoppel, ratification, and laches.

Defendant thereafter filed a motion to dismiss or, in the alternative, a motion for summary judgment. After reviewing affidavits and depositions, the trial court allowed defendant's motion for summary judgment. Plaintiff appeals.

*Nichols, Caffrey, Hill, Evans & Murrelle, by Edward L. Murrelle and Robert D. Albergotti, for plaintiff appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by C. T. Leonard, Jr. and Edward C. Winslow, III, for defendant appellee.*

MORRIS, Chief Judge.

Under G.S. 1A-1, Rule 56, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." The purpose of the rule is not to allow the trial court to decide an issue of material fact, but to allow it to determine whether a genuine issue of material fact exists. *Hotel Corp. v. Taylor*, 301 N.C. 200, 271 S.E. 2d 54 (1980). In ruling on a motion for summary judgment, the trial court must review the record in the light most favorable to the party opposing the motion. *Investment Co. v. Greene*, 48 N.C. App. 29, 268 S.E. 2d 810, *disc. review denied*, 301 N.C. 235, --- S.E. 2d --- (1980).

By his appeal, plaintiff seeks to raise questions concerning whether there were genuine issues of material fact relating to his allegations concerning fraud. We do not, however, reach these issues since we hold, after careful review of case authority and the undisputed facts set forth in the record, that plaintiff's action was barred by the statute of limitations.

G.S. 1-52 outlines those actions which are barred after a three-year period. G.S. 1-52(9) deals specifically with actions based on fraud or mistake:

> (9) For relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

Plaintiff's action, therefore, was barred by the statute of limitations if plaintiff discovered the facts constituting the fraud more than three years prior to 11 August 1980, the date on which he filed his complaint.

In proper situations, the running of the statute of limitations may be the basis for granting summary judgment. *Brantley v. Dunstan,* 10 N.C. App. 706, 179 S.E. 2d 878 (1971). Ordinarily, when the evidence is not conclusive or is conflicting, the question of whether plaintiff, in the exercise of due diligence, should have discovered the facts constituting mistake (and, therefore, fraud) more than three years prior to institution of the action is for the jury. *Lowery v. Wilson,* 214 N.C. 800, 200 S.E. 861 (1939). Failure of plaintiff, however, to exercise due diligence in discovering fraud can be determined as a matter of law where it is clear that there was both capacity and opportunity to discover the fraud. *See Moore v. Casualty,* 207 N.C. 433, 177 S.E. 406 (1934). In *Peacock v. Barnes,* 142 N.C. 215, 218, 55 S.E. 99, 100 (1906), the Supreme Court aptly stated the duty of one to discover the facts of an alleged mistake:

> A man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish.

We believe that the case before us contains an example of inexcusable procrastination even after discovery of the facts which plaintiff contends constituted fraud.

Under the established facts of this case, plaintiff, while standing in front of a dye beck at defendant's plant, conceived the idea of the endless strand dyeing apparatus. This was in 1963, and by early 1964, the defendant had reduced the idea to a model, had had it built, and was using it. In June 1964, plaintiff quit his job with defendant. When he left, he made no inquiry about money generated or saved by his invention. He was rehired by defendant later in 1964, and shortly thereafter executed a patent agreement whereby he agreed to assign all improvements and inventions to defendant. In December 1964, plaintiff, along with four other men involved in production of the apparatus, assigned their full and exclusive rights to the apparatus for liquid treating of textile fabric and process to the defendant. By the same agreement, plaintiff authorized the Commissioner of Patents to issue Letters Patent to defendant. Some eight or nine years later, plaintiff testified in a case involving the patent, *Hiatt v. Ziegler*, 179 U.S. P.Q. 757 (1973), and the Patent Office Board of Patent Interferences awarded priority of invention of the apparatus to Hiatt. A deposition by plaintiff showed that he was aware that he had assigned the patent to defendant and that he knew of the success and the income-generating capability of the project:

> I do not have right now a framed patent document which showed me as "assignor of his first patent to Burlington Industries, Inc." which was among certain documents produced by me purusant to a request. I did have it, and I have had it since about 1975. Among other things in there, I had a copy of the patent which I received in 1975. Concerning whether I know that the patent wasn't actually issued until 1974, I knew it after — I received everything I've got in 1975. I had not seen the copy of the patent or any of that until 1975. I received that paper work in a brown envelope. Later on I received that plaque that has been referred to. Concerning whether I knew as late as 1971 that my testimony was being taken in connection with the challenge to the patent, or an interference with the patent, and the patent couldn't be issued until that was concluded, I did not understand all that. Concerning whether I knew there was some purpose for me giving all this testimony, I knew that there was a conflict of

interest between us — I say "us" because I worked for Bur-
lington — and United. I didn't know what the whole thing
was about. That's all I understood, that there was a conflict. I
knew that this invention was being used on dye becks
throughout Burlington. I knew that it was being used by
other companies. I did not know that it was being used par-
ticularly through United Merchants. I was told that there
was a settlement made between Burlington and United, and
that Burlington had won this settlement. An attorney called
me and told me that United had to reimburse Burlington for
the royalties they had collected, and the thing was settled. I
didn't call him; he called me. I didn't ask him anything. The
only thing I said was, "That's good." I never asked any ques-
tions or raised any objections when I received my plaque
showing that I was the assignor of the patent or the patent
that showed that Burlington was the assignee. I never raised
any objections to it, because I knew Burlington was going to
use it.

Plaintiff continued to work for defendant until 27 January 1977,
when he retired. In July 1980, plaintiff read a patent law article
which prompted him first to see an attorney and then to file this
action.

In its argument that the statute of limitations had run, de-
fendant contends that plaintiff should be charged with knowledge
of the contents of the agreement he signed. In *Williams v.
Williams*, 220 N.C. 806, 809-810, 18 S.E. 2d 364, 366 (1942), the
Supreme Court stated the rule:

In this State it is held that one who signs a paper
writing is under a duty to ascertain its contents, and in the
absence of a showing that he was willfully misled or misin-
formed by the defendant as to these contents, or that they
were kept from him in fraudulent opposition to his request,
he is held to have signed with full knowledge and assent as
to what is therein contained.

If plaintiff, as defendant contends, "knew" of the agreement when
he signed it, the statute of limitations began to run at the time he
signed it, in 1964.

Plaintiff's response to this argument is that there was a con-
fidential relationship between the plaintiff and the defendant,

employee and employer, such that the plaintiff was under no duty to make inquiry as to the contents of the writing. Citing *Vail v. Vail,* 233 N.C. 109, 63 S.E. 2d 202 (1951), plaintiff argues that, where the person perpetrating the fraud is in a fiduciary relationship with the defrauded party, the latter is under no duty to make inquiry, and the cause of action does not accrue until something happens which excites his suspicion that the person has breached his duty to disclose all the essential facts and to take no unfair advantage of him.

Under our case law, it has been stated that the relation of employer and employee is not one of those regarded as confidential; nor is it one from which a presumption of fraud or undue influence will arise. *King v. R. R.,* 157 N.C. 44, 72 S.E. 801 (1911). At the same time, however, our courts have recognized that the employer has great influence in determining the conduct of the employee and may use it to the employee's injury. *Id.*

We do not find it necessary to re-examine the question of whether an employer-employee relationship is or can be a confidential one. Assuming, *arguendo*, that it was a confidential relationship, that fact does not toll the running of the statute once the plaintiff has actually discovered the facts allegedly constituting the fraud.

The essence of plaintiff's complaint is that defendant defrauded him into assigning to it his interest in the endless dyeing strand apparatus and that, had plaintiff known what he was signing, he would not have done so. From the facts set forth above, however, it is clear that plaintiff knew or, by due diligence should have known, of the facts allegedly constituting this fraud no later than 1975, five years before he filed this lawsuit. If plaintiff, as he alleges in his complaint, did not know in 1964 that he was giving up his rights to his invention and that he would receive no benefit therefrom, his deposition shows that he knew these matters in 1975. Plaintiff was aware that the apparatus was being used not only by defendant, but also by other companies in the industry. He knew that defendant was collecting royalties from these other companies, and finally he knew that he was receiving none of the pecuniary benefits being derived from his invention.

Plaintiff attempts to prolong the statute of limitations by arguing that his knowledge of the facts of the alleged fraud was

not complete until 1980 when he read an article about the law of patents. We reject this argument. Knowledge of the *law* governing alleged fraud is not included in the G.S. 1-52(9) requirement of knowledge of the *facts* constituting the alleged fraud.

In summary, we find that the uncontroverted facts established that, more than three years before he filed this lawsuit, plaintiff knew, or with due diligence should have known, the facts constituting the alleged fraud. He waited too long to initiate this action which is, consequently, barred by the statute of limitations. Summary judgment is

Affirmed.

Judges ARNOLD and BECTON concur.