

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2003

# Wallin v. Metro Life Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4297

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Wallin v. Metro Life Ins Co" (2003). *2003 Decisions.* Paper 481.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/481

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-4297

———

DONNA R. WALLIN,

Appellant

v.

METROPOLITAN LIFE INSURANCE COMPANY,
JACK E. DUCKWORTH,

Appellees

———

On Appeal from the United States District Court
for the Western District of Pennsylvania

(D.C. No. 97-CV-1173)

District Judge:  The Honorable Donetta W. Ambrose

———

Submitted under Third Circuit LAR 34.1(a)
Friday, May 16, 2003

Before:  RENDELL, SMITH and ALDISERT, Circuit Judges.

(Filed:   June 4, 2003 )

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

Donna R. Wallin, the insured under an insurance policy issued by Metropolitan Life Insurance Company, appeals from the district court's decision to grant summary judgment in favor of the company and agent Jack Duckworth on the grounds that the Appellant's fraudulent representation claims were barred by state statutes of limitations. The law of North Carolina applies in this diversity action. Because we agree with the district court's decision, we will affirm without reaching the merits of Appellant's substantive claims that Duckworth had made fraudulent oral misrepresentations in inducing Appellant to purchase a number of insurance policies.

I.

As we write only for the parties who are familiar with the facts and contentions raised, we will limit our discussion to the controlling legal issues.

Because Appellant did not raise the issue of the proper length of the statute of limitations for an alleged breach of a fiduciary duty in the district court, we will not notice this argument. Gass v. Virgin Islands Tel. Corp., 311 F.3d 237, 245 (3d Cir. 2002) (noting that the "failure to raise an issue in the district court constitutes a waiver of that argument"). We shall instead confine ourselves to the statutes of limitations for fraudulent representation.

North Carolina General Statute § 1-52(9) states that a claim "[f]or relief on the grounds of fraud or mistake" must be filed within three years of the aggrieved party's "discovery . . . of the facts constituting the fraud or mistake." Under this provision,

2

"discovery" means actual discovery or when the fraud should have been discovered in the exercise of reasonable diligence. Grubb Props. Inc. v. Simms Inv. Co., 400 S.E.2d 85, 88 (N.C. App. 1990) (concluding that plaintiff failed to exercise reasonable diligence as a matter of law where it neglected to discover for nearly four years that a tract of land was not included in a deed). Almost 70 years ago, the North Carolina Supreme Court remarked that:

> [a] man should not be allowed to close his eyes to facts observable by ordinary attention and maintain for his own advantage the position of ignorance. Such principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish.

Moore v. Fidelity and Casualty Co., 177 S.E. 406, 408 (N.C. 1934).

## II.

It is against these statutes and case law precepts that we examine the adjudicative facts present here.

Appellant contends that Duckworth, Metropolitan Life's agent, told her that she was buying a retirement policy issued on November 24, 1989 – Policy Number 895 193 861 A, the "Life 95 Policy." Joint Appendix at 320. The policy explicitly stated that the insurance proceeds would be payable when the insured dies, that premiums were payable for a stated period and that annual dividends would be paid. Id. at 324-327. The original annual premium was $34.50 a year for a policy in the amount of $35,000.00. Id. at 349, 351. In February 1993, she decided to purchase "paid-up" additional insurance on the

3

same policy with an annual premium of $381.05.  Id. at 368-369.  By paying this premium for the policy years four through seven, she would receive additional coverage ranging from $9,000.00 to $16,000.00.  Id.  Thereafter, she was not required to pay the additional premium, but the total insurance would then decrease year by year, except for the year that she died.  Upon her death, there would be an additional insurance payment of $26,060.34.  From an actuarial standpoint, although she would stop paying premiums after the seventh year, the annual dividend of the company would be used to cover the additional insurance.

By the time the original policy was issued in 1989, Appellant had held a number of positions that required financial acumen.  From 1984 through 1989, she served as assistant manager and later manager of Variety Wholesalers.  She was responsible for bookkeeping, handling the payroll, ordering merchandise, balancing registers and merchandising.  She was no novice to financial transactions.

Each policy contained the following general provisions:

> The Contract.  This policy includes any riders and, with the application attached when the policy is issued, makes up the entire contract.  All statements in the application will be representations and not warranty.  No statement will be used to contest the policy unless it appears in the application.

* * *

> Limitation on Sales Representative's Authority.  No sales representative or other person except our President, Secretary, or a Vice-President may a) make or change any contract of insurance; or b) change or waive any of the terms of the policy.  Any change must be in writing and signed by our

4

President, Secretary or Vice-President.

Id. at 328 (emphasis added). The life insurance policies issued by Metropolitan Life through Duckworth contained clear language explaining their terms, the premium payment obligations and the inability of sales representatives to modify the terms of the contract.

In her complaint, Wallin charged that Duckworth had told her that under the terms of the policy she could retire at age 65 with a monthly income of $481.37. Id. at 373. The policy, however, contained no provision stating that it was a retirement policy entitling her a monthly sum upon reaching the age of 65.

Wallin was provided ample opportunity – and indeed had the legal obligation – to read the language in the policy and return it if she were not satisfied. She simply chose not to do so. Id. at 349. Had she read the policy, she would have seen immediately that she had a long-term, ongoing obligation to pay premiums and that she purchased a life insurance policy payable only upon death. Her failure to exercise the right to return the policies constituted acceptance.

The limitations period for their fraudulent representation claim is three years. She purchased her policy in November 1989 but did not bring suit until March 1997 – nearly eight years later. When she received her policies, she was put on actual notice of the discrepancies between the express written terms of the policies and the alleged oral representations made to her. Nevertheless, she did not begin the action until long after

5

the expiration of the longest limitations period for her claim.

Under North Carolina law, policyholders are under a duty to read their insurance policies. Elam v. Smithdeal Realty & Ins. Co., 109 S.E. 632, 634 (N.C. 1921). Where a party has reasonable opportunity to read the instrument in question and the language of the instrument is clear, unambiguous, and easily understood, failure to read the instrument bars that party from asserting his belief that the policy contained provisions which it does not. Baggett v. Summerlin Ins. & Realty Co., 554 S.E.2d 336 (N.C. 2001) (citing Baggett v. Summerlin Ins. & Realty Co., 545 S.E.2d 462, 468-469 (N.C. App. 2001) (Tyson, J., dissenting). Appellant testified that she did not thoroughly review her policy, and that she did not recall seeing the word "retirement" in her policy documents. Joint Appendix at 149-150.

In light of the foregoing, we agree with the district court that Appellant's claim was barred by the statute of limitations.

\* \* \* \* \*

We have considered all contentions raised by the parties and conclude that no further discussion is necessary.

The judgment of the district court will be affirmed.

TO THE CLERK:

Please file the foregoing opinion.

   /s/ Ruggero J. Aldisert
                Circuit Judge