LEONHARD BERNOLD, Petitioner v. BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA, Respondent

No. COA09-165

(Filed 6 October 2009)

**1. Schools and Education— discharge of tenured professor— professional incompetence—unsatisfactory post-tenure reviews—collegiality**

The superior court did not err by upholding the discharge of a tenured professor for lack of collegiality. Petitioner was aware that collegiality was a professional expectation for his position, it was a possible focus of evaluation during his post-tenure reviews, and he received unsatisfactory post-tenure reviews in three consecutive years.

**2. Schools and Education— discharge of tenured professor— due process—post-tenure review process**

The superior court did not err by failing to find that respondent Board of Governors violated a tenured professor's due process rights in its use of the post-tenure review process to discharge him because, after petitioner's three negative post-tenure reviews, respondent followed the process set forth in Section 603 of the Code of the Board of Governors of the University of North Carolina.

**3. Schools and Education— discharge of tenured professor— professional incompetence—disruptive behavior—whole record test**

The superior court did not err by holding that substantial evidence in the record supported petitioner tenured professor's discharge based on incompetence because the record contained ample evidence that petitioner was disruptive to the point that his department's function and operation were impaired.

Appeal by petitioner from judgment and order entered 11 July 2008 by Judge Carl R. Fox in Wake County Superior Court. Heard in the Court of Appeals 14 September 2009.

*Patterson Harkavy, L.L.P., by Ann Groninger, for petitioner.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Valerie L. Bateman, for respondent.*

BRYANT, Judge.

This matter concerns judicial review of the decision to discharge a tenured professor in the College of Engineering at North Carolina State University. After petitioner Leonhard Bernold received post-tenure review findings of "does not meet expectations" during 2002, 2003, and 2004, he was discharged on the bases of incompetent teaching and incompetent service. Petitioner requested a hearing before the faculty hearing committee ("the committee") which was held during May, June, August and September 2005. The Committee unanimously found petitioner was not an incompetent teacher, but voted 3 to 2 that he had given incompetent service. The committee did not make a recommendation as to petitioner's discharge. The University's chancellor upheld the committee's finding on petitioner's teaching and remanded the matter to petitioner's department in the College of Engineering for a recommendation on discharging petitioner based solely on incompetent service. Subsequently, in June 2006, the committee held additional hearings on the issue of petitioner's service and this time, voted 4 to 1 that petitioner was not incompetent in the area of service. The chancellor reversed the committee's new decision on service and the University's Board of Trustees ("the Trustees") affirmed the chancellor. On 30 May 2007, the University of North Carolina's Board of Governors ("the Board") affirmed the Trustees' decision. Petitioner then sought judicial review in the Wake County Superior Court pursuant to N.C. Gen. Stat. § 150B-51. On 8

July 2008, following a hearing, the superior court affirmed the Board's decision to uphold petitioner's discharge. Petitioner appeals.

*Facts*

Since 1996, petitioner has been a tenured professor in the Department of Civil, Construction and Environmental Engineering ("the department") at North Carolina State University. In 2002, the University adopted post-tenure review regulations. Regulation 05.20.04 provides that unsatisfactory reviews in two consecutive years or any three out of five years "will constitute evidence of the professional incompetence of the individual and may justify the imposition of serious sanctions up to or including discharge for cause." Petitioner received unsatisfactory post-tenure reviews in 2002, 2003 and 2004 which specified that his service did not meet expectations. Petitioner's discharge resulted.

———————————

Petitioner entered seven assignments of error which he brings forward in three arguments on appeal: the superior court (I) committed reversible error in upholding his discharge on grounds of lack of collegiality (a substantive due process claim); (II) committed reversible error in failing to find that petitioner's discharge violated his right to procedural due process; and (III) erred in holding that the record contained substantial evidence to support his discharge for incompetence. For the reasons discussed below, we affirm.

*Standard of Review*

"When a superior court exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court." *Early v. County of Durham, Dep't of Soc. Servs.*, —— N.C. App. ___,. ___, 667 S.E.2d 512, 519 (2008) (citations omitted), *disc. review denied*, 363 N.C. 372, 678 S.E.2d 237 (2009). The standard of review of an administrative decision by the superior court is governed by N.C.G.S. § 150B-51(b):

> [I]n reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C.G.S. § 150B-51(b) (2009).

Contentions by a petitioner of errors of law in the agency decision are reviewed *de novo* in the trial court. *Shackleford-Moten v. Lenoir County Dep't of Soc. Servs.*, 155 N.C. App. 568, 571, 573 S.E.2d 767, 769 (2002). "If the petitioner questions whether the agency's decision was supported by the evidence, was arbitrary and capricious or was the result of an abuse of discretion, the reviewing court must apply the 'whole record' test." *Id.* Under the 'whole record' test, the trial court must examine all competent evidence to determine whether the agency decision is supported by substantial evidence. *Id.* at 571, 573 S.E.2d at 770. Here, petitioner alleged both errors of law, that his substantive and procedural due process rights were violated, and a factual error, that no substantial evidence supported his discharge.

This Court's task when reviewing a superior court's order reviewing an administrative decision is simply to "consider those grounds for reversal or modification raised by the petitioner before the superior court and properly assigned as error and argued on appeal to this Court." *Id.* at 572, 573 S.E.2d at 770.

*I*

[1] Petitioner first argues that the superior court erred in upholding his discharge on grounds of lack of collegiality because tenured professors have a substantive due process right to protection from discharge except for incompetence, misconduct or neglect of duty. Having considered this issue *de novo*, we disagree.

Due process requirements for tenured faculty facing discharge are governed by Section 603 of the Code of the Board of Governors of the University of North Carolina ("the Code"). Petitioner is correct that Section 603(1) provides for discharge of tenured faculty only on

the basis of "incompetence, neglect of duty, or misconduct of such a nature as to indicate that the individual is unfit to continue as a member of the faculty." However, The University's post-tenure review regulation 05.20.04 specifies that unsatisfactory reviews in two consecutive years or any three out of five years "will constitute evidence of the professional *incompetence* of the individual and *may justify the imposition of serious sanctions up to or including discharge for cause.*" (Emphasis added).

Here, respondent based its discharge of petitioner on "incompetence of service" which rendered him unfit to continue as a member of the faculty, specifically alleging that petitioner's interactions with colleagues had been so disruptive that the effective and efficient operation of his department was impaired. College of Engineering Regulation 05.67.04 states that "each faculty member is expected to work in a collegial manner." Thus, petitioner was aware that collegiality was a professional expectation for his position and that his collegiality or lack thereof was one possible focus of evaluation during his post-tenure reviews. Petitioner received unsatisfactory post-tenure reviews in three consecutive years, which constitutes sufficient evidence of his professional incompetence to justify his discharge for cause under post-tenure review regulation 05.20.04 and Section 603. Petitioner's argument is overruled.

*II*

**[2]** Petitioner next argues that the superior court committed reversible error in failing to find that respondent violated his due process rights in its use of the post-tenure review process to discharge him. We disagree.

Specifically, petitioner contends respondent failed to provide him "a clear plan and timetable" for addressing his deficiencies, thus violating his procedural due process. As previously discussed, Section 603 specifies the due process protections to which a tenured faculty member is entitled and contains a detailed schedule of steps involving notice and hearings which the university must take prior to discharging a tenured faculty member. Section 603 does not contain any requirement for the tenured faculty member to be provided with "a clear plan and timetable."

Instead, this language comes from the University of North Carolina Policy Manual, Policy 400.3.3(1)(a)(2), which states that one purpose of the post-tenure review process is to "provid[e] for a clear

plan and timetable for improvement of performance of faculty found deficient." Policy 400.3.3(1)(g) further recommends that a faculty member who receives a less than satisfactory review be provided with a plan which "include[s] specific steps designed to lead to improvement, a specified time line in which improvement is expected to occur, and a clear statement of consequences should improvement not occur within the designated time line." However, these policies are not statements of due process requirements like Section 603 of the Code, but only a list of principles to guide the post-tenure review process.

Following petitioner's three negative post-tenure reviews, respondent followed the process set forth in Section 603 and petitioner does not argue otherwise. The superior court did not err in upholding the Board's decision and concluding that petitioner was not denied due process during his post-tenure review process.

*III*

[3] In his final argument, petitioner contends the superior court erred in holding that substantial evidence in the record supported his discharge for incompetence. We disagree.

Under the whole record test, the superior court was tasked with determining whether there was substantial evidence in the record to support the Board's decision. "The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citation omitted).

The superior court held that the record contained substantial evidence that petitioner's behavior constituted incompetence that rendered him unfit to continue as a faculty member and we agree. Petitioner relies on his argument that "lack of collegiality" cannot constitute incompetence; however, he cites no authority that disruptive behavior cannot constitute incompetence. Petitioner then draws our attention to evidence in the record showing petitioner's positive interactions with some colleagues and explaining the reasons behind his negative interactions with others. Our task is not to comb the record for evidence that would support a different outcome from that reached by the Board, but rather to look for substantial evidence to support the decision. *Id.* Here, the record contains ample evidence that petitioner was disruptive to the point that his department's

function and operation were impaired. Petitioner's argument is without merit.

AFFIRMED.

Chief Judge MARTIN and Judge HUNTER, Robert C., concur.