ARROWOOD, Judge.
 

 *591
 
 Respondents North Carolina Department of Environmental Quality ("NCDEQ")
 
 [1]
 
 , Division of Waste Management ("DWM"), and Division of Energy, Mineral and Land Resources ("DEMLR") (collectively "the Department"), and respondent-intervenors Green Meadow, LLC and Charah, Inc. (collectively "Permittees") appeal from "Order on Judicial Review" (the "Order") that affirmed in part and reversed in part the Administrative Law Judge's ("ALJ") decision to uphold permits allowing for the use of coal combustion residual ("coal ash") to be used as structural fill at open pit mines in Chatham and Lee counties. For the following reasons, we reverse and remand to the superior court for further remand to the North Carolina Office of Administrative Hearings ("OAH").
 

 I.
 
 Background
 

 Subsequent to the Dan River coal ash spill in February 2014, the North Carolina General Assembly passed the Coal Ash Management Act of 2014 ("CAMA"),
 
 *675
 
 N.C. Gen. Stat. § 130A-309.200
 
 et seq.
 
 , in August 2014 to mandate the closure and remediation of coal ash surface impoundments.
 
 2014 N.C. Sess. Laws 122
 
 . As part of the CAMA framework, CAMA provides for expedited review by the Department of applications for permits necessary to conduct closure and remediation activities required by the act.
 
 See
 
 N.C. Gen. Stat. § 130A-309.203 (2017). Those activities requiring permits include the use of coal ash as structural fill. N.C. Gen. Stat. § 130A-309.219 (2017).
 

 The present case concerns four permits issued by the Department to Permittees on 5 June 2015. Specifically, the DEMLR issued two modified mining permits and the DWM issued two structural fill permits. Together, those permits allow for the continued excavation and the use of coal ash as structural fill at the Brickhaven No. 2 Mine in Chatham County and the Colon Mine in Lee County, both open pit mines.
 
 [2]
 

 *592
 
 On 6 July 2015, Blue Ridge Environmental Defense League, Inc., and its chapters in Chatham and Lee counties, Chatham Citizens Against Coal Ash Dump and EnvironmentaLEE (collectively "Petitioners"), filed a petition in the OAH for a consolidated contested case hearing on all four permits. The petition alleged that "[t]he actions allowed by the permits would have a significant and adverse impact on the health and well-being of the members of the Petitioners, and on their families, the use and enjoyment of their property, the value of their property and other economic interests[,]" and that "[t]he [Department's] issuance of the [p]ermit[s] has substantially prejudiced the rights of the Petitioners and their members." The petition specified seven issues with the permits.
 

 On 14 July 2015, Permittees filed motions to intervene in the contested case hearing, which were granted by an OAH order filed 18 August 2015. Following amendments to one of the permits, the petition, and an OAH scheduling order, notice of hearing was filed on 27 October 2015 scheduling the matter for hearing in Raleigh in early December 2015. Prior to that hearing, the Department filed a motion for summary judgment on 9 November 2015. Petitioners filed a response to the Department's motion for summary judgment on 19 November 2015 seeking summary judgment in their favor. Permittees joined the Department's motion for summary judgment on 20 November 2015.
 

 The contested case was heard in the OAH before the Honorable Melissa Owens Lassiter, on 7 and 8 December 2015. Upon hearing arguments on the motion for summary judgment, the ALJ granted summary judgment on one of the issues raised by Petitioners, which Petitioners then voluntarily dismissed as opposed to having a partial summary judgment order entered. When the hearing proceeded on the other issues, it was brought to the ALJ's attention that Petitioners were not ready to proceed on two of the remaining issues because their expert witnesses were not available. As a result, the Department moved to dismiss those issues. The ALJ denied the motion to dismiss and the hearing proceeded without Petitioners' expert witnesses present. At the conclusion of the Petitioners' presentation of evidence, the Department renewed its motion for summary judgment, which Permittees joined. Petitioners opposed the motions and sought summary judgment in their favor. The ALJ took the motions under advisement so that she could review the evidence.
 

 On 10 February 2016, the ALJ filed an order granting an involuntary dismissal. In the order the ALJ explained as follows:
 

 [U]pon consideration of the evidence presented by both parties during Petitioner's case in chief, Respondent's
 
 *593
 
 Motion for Summary Judgment at the close of Petitioner's evidence, and Petitioner's response thereto, the undersigned hereby
 
 DENIES
 
 Respondent's Motion for Summary Judgment. The undersigned hereby converts Respondent's Motion for Summary Judgment to a Motion for Involuntary Dismissal, pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure, and
 
 GRANTS
 
 such Motion. Petitioner failed to
 
 *676
 
 meet its burden of proof in its case-in-chief, by failing to show it had a right to relief. Petitioner failed to show by a preponderance of the evidence that Respondent substantially prejudiced Petitioners' rights, exceeded its authority or jurisdiction, acted erroneously, failed to use proper procedure, acted arbitrarily or capriciously, and failed to act as required by law or rule in issuing the subject permits to [Permittees].
 

 The ALJ's order further directed the Department and Permittees to file a joint proposed decision with the OAH.
 

 On 5 May 2016, the ALJ filed her "Final Decision" with detailed findings and conclusions. In addition to denying the Department's and Permittees' motion for summary judgment and granting the Department's and Permittees' converted motion for involuntary dismissal pursuant to Rule 41(b), the order explained the consequences of the dismissal as follows:
 

 The decision by DWM to issue two permits on June 5, 2015 for a Structural Fill Permit to Construct and Operate, Permit No. 5306-STRUC-2015 for the Colon Mine to Charah, Inc. and Green Meadow, LLC and a Structural Fill Permit to Construct and Operate, Permit No. 1910-STRUC-2015 for the Brickhaven No. 2 Tract "A" Mine to Charah, Inc. and Green Meadow, LLC is hereby
 
 UPHELD
 
 . Further, DEMLR's decision to issue two permits on June 5, 2015 for a mining permit modification, Permit No. 53-05 for the Colon Mine to Green Meadow, LLC and mining permit modification, Permit No. 19-25 for the Brickhaven No. 2 Tract "A" Mine to Green Meadow, LLC is hereby
 
 UPHELD
 
 .
 

 On 6 May 2016, the ALJ filed an "Order Amending Final Decision" to correct an error and add a transcript reference.
 

 On 1 June 2016, Petitioners filed a "Civil Summons" and a "Petition for Judicial Review" (the "petition") in Chatham County Superior Court, followed by a brief in support of the petition on 1 August 2016.
 

 *594
 
 Permittees and the Department responded by filing briefs in opposition to the petition on 15 September 2016.
 

 The petition was heard in Chatham County Superior Court before the Honorable Carl R. Fox on 14 November 2016. Upon hearing arguments, the court took the matter under advisement. On 10 April 2017, the court filed the Order affirming the ALJ's Final Decision in part and reversing the ALJ's Final Decision in part. Specifically, the court ordered as follows:
 

 1. The Final Decision is
 
 AFFIRMED
 
 as it relates to the use of the areas already mined or otherwise excavated in the two coal ash disposal sites (Brickhaven and Colon Road), and;
 

 2. The Final Decision is
 
 REVERSED
 
 as to areas not already mined or otherwise excavated, and the two mine reclamation permits were issued improperly by the [Department] and are hereby
 
 REVOKED
 
 .
 

 In so holding, the court amended, omitted, or outright rejected many of the ALJ's findings of fact and conclusions of law. The effect of the Order is that mining may continue at the Brickhaven No. 2 and Colon mines, but coal ash may only be used as structural fill in the areas mined or excavated at the time the permits were issued.
 

 Permittees filed notice of appeal on 27 April 2017.
 
 [R p 1236]
 
 The Department filed notice of appeal on 4 May 2017.
 

 Subsequent to the filing of the notices of appeal, Permittees filed a motion to stay the enforcement of the Order in Chatham County Superior Court and Petitioners filed a response and motion to enforce the Order. Following a hearing on Permittees' motion to stay, the court denied the motion by order filed 15 June 2017. Permittees then filed a petition for writ of supersedeas and a motion for a temporary stay with this Court. On 14 June 2017, this Court granted a temporary stay pending a ruling on the petition for writ of supersedeas. On 27 June 2017, this Court allowed a petition for writ of supersedeas, thereby staying the Order upon Permittees posting of a bond, pending the outcome of the appeal.
 

 II.
 
 Discussion
 

 On appeal, the Department and Permittees raise various issues with the superior court's
 
 *677
 
 review of the ALJ's Final Decision and the court's interpretation of the relevant statutory provisions. Because of the
 
 *595
 
 unique procedural posture of this case, we address only the trial court's review of the ALJ's Final Decision and do not reach the issues of statutory interpretation.
 

 "The North Carolina Administrative Procedure Act (APA), codified at Chapter 150B of the General Statutes, governs trial and appellate court review of administrative agency decisions."
 
 Amanini v. N.C. Dep't of Human Res.
 
 ,
 
 114 N.C. App. 668
 
 , 673,
 
 443 S.E.2d 114
 
 , 117 (1994). The APA provides a party aggrieved by a final decision in a contested case a right to judicial review by the superior court. N.C. Gen. Stat. §§ 150B-43 and -50 (2017). A party to the review proceeding in superior court may then appeal from the superior court's final judgment to the appellate division. N.C. Gen. Stat. § 150B-52 (2017). The APA sets forth the scope and standard of review for each court.
 

 "The scope of review to be applied by the appellate court under [the APA] is the same as it is for other civil cases."
 
 Id
 
 . Thus, our appellate courts have recognized that "[t]he proper appellate standard for reviewing a superior court order examining a final agency decision is to examine the order for errors of law."
 
 Shackleford-Moten v. Lenoir Cnty. Dep't of Soc. Servs.
 
 ,
 
 155 N.C. App. 568
 
 , 572,
 
 573 S.E.2d 767
 
 , 770 (2002) (citing
 
 ACT-UP Triangle v. Comm'n for Health Servs.
 
 ,
 
 345 N.C. 699
 
 , 706,
 
 483 S.E.2d 388
 
 , 392 (1997) ). Our appellate courts have further explained that "this 'twofold task' involves: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly."
 
 Hardee v.
 

 N.C. Bd. of Chiropractic Examiners
 
 ,
 
 164 N.C. App. 628
 
 , 633,
 
 596 S.E.2d 324
 
 , 328 (2004) (internal quotation marks and citations omitted). As a result, this Court has required that "[t]he trial court, when sitting as an appellate court to review an administrative agency's decision, must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review."
 
 Sutton v. N.C. Dept. of Labor
 
 ,
 
 132 N.C. App. 387
 
 , 389,
 
 511 S.E.2d 340
 
 , 342 (1999). "As in other civil cases, we review errors of law
 
 de novo
 
 ."
 
 Hilliard v. N.C. Dep't of Correction
 
 ,
 
 173 N.C. App. 594
 
 , 596,
 
 620 S.E.2d 14
 
 , 17 (2005).
 

 "When a superior court exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court."
 
 Bernold v. Bd. of Governors of Univ. of North Carolina
 
 ,
 
 200 N.C. App. 295
 
 , 297,
 
 683 S.E.2d 428
 
 , 430 (2009) (quotation marks and citations omitted). The APA limits the scope of the superior court's judicial review as follows:
 

 (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings.
 

 *596
 
 It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
 

 (6) Arbitrary, capricious, or an abuse of discretion.
 

 N.C. Gen. Stat. § 150B-51(b) (2017). "The superior court's standard of review is dictated by the nature of the errors asserted."
 
 Shackleford-Moten
 
 ,
 
 155 N.C. App. at 571
 
 ,
 
 573 S.E.2d at
 
 769 (citing
 
 ACT-UP
 
 ,
 
 345 N.C. at 706
 
 ,
 
 483 S.E.2d at
 
 392 ). The APA sets forth the standard of review to be applied by the superior court as follows.
 

 (c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review
 
 *678
 
 of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.
 

 N.C. Gen. Stat. § 150B-51(c).
 

 These standards of review are distinct. Under a
 
 de novo
 
 review, the superior court consider[s] the matter anew[ ] and freely substitut[es] its own judgment for the agency's judgment. When utilizing the whole record test, however, the reviewing court must examine all competent evidence (the "whole record") in order to determine whether the
 
 *597
 
 agency decision is supported by substantial evidence. The "whole record" test does not allow the reviewing court to replace the [b]oard's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it
 
 de novo
 
 .
 

 Mann Media, Inc. v. Randolph Cnty. Planning Bd.
 
 ,
 
 356 N.C. 1
 
 , 13-14,
 
 565 S.E.2d 9
 
 , 17-18 (2002) (internal quotation marks and citations omitted).
 

 In the present case, Petitioners asserted four exceptions to the ALJ's Final Decision in their petition for judicial review. First, Petitioners broadly asserted that the ALJ improperly upheld the permits and erroneously granted the involuntary dismissal. Petitioners alleged the permits and dismissal prejudiced their substantial rights under N.C. Gen. Stat. § 150B-51(b)(2)-(6). Petitioners next challenged specific findings and conclusions in three more specific exceptions alleging the ALJ erred: (2) "by finding and concluding the proposed coal ash disposal facilities were mine reclamation projects rather than solid waste landfills[;]" (3) "in giving undue deference to the unsupported positions of the staff of the Respondent state agencies[;]" and (4) "in misrepresenting the testimony and qualification of [p]etitioners' witness, Mr. Kovasckitz, and made no conclusions of law regarding his expert opinion."
 

 These issues raised by Petitioners required the superior court to perform distinctly different reviews of the evidence under the whole record standard and of issues of law under the de novo standard. However, it is unclear from the Order what standards the superior court applied to the issues raised, making it impossible for this Court to determine whether the proper standards were applied and whether the standards were applied correctly. The Order does not even reference the exceptions raised by Petitioners. Instead, it appears the superior court reweighed the evidence and rewrote the ALJ's decision. In doing so, the court amended, omitted as "not in issue," or completely rejected without explanation many of the ALJ's findings of fact and conclusions of law. Thus, we hold the superior court erred in its review of the ALJ's Final Decision.
 

 In the past, when the superior court failed to indicate the standard of review applied to resolve the issues raised on appeal, or if its order was unclear, this Court simply reversed and remanded the case to the superior court for it to do so.
 
 Shackleford-Moten
 
 ,
 
 155 N.C. App. at 572
 
 ,
 
 573 S.E.2d at 770
 
 . However, in
 
 Shackleford-Moten
 
 , this Court explained that "our Supreme Court reversed this line of cases in a recent per curiam
 
 *598
 
 decision for reasons stated in a dissenting opinion from this Court."
 
 Id
 
 . This Court further explained that dissenting opinion as follows:
 

 In
 
 Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.
 
 ,
 
 146 N.C. App. 388
 
 ,
 
 552 S.E.2d 265
 
 (2001),
 
 rev'd per curiam
 
 ,
 
 355 N.C. 269
 
 ,
 
 559 S.E.2d 547
 
 (2002), Judge Greene, in a dissenting opinion, wrote that an appellate court's obligation to review a superior court order examining an agency decision "can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court."
 
 Id
 
 . at 392,
 
 552 S.E.2d at 268
 
 (Greene, J., dissenting). Thus, in reviewing a superior court order examining an agency decision, an appellate court must determine whether the agency decision (1) violated constitutional provisions; (2) was in excess of the statutory authority or jurisdiction of the agency; (3) was made upon unlawful procedure; (4) was affected by other error of law; (5) was unsupported
 
 *679
 
 by substantial admissible evidence in view of the entire record; or (6) was arbitrary, capricious, or an abuse of discretion. N.C. Gen. Stat. § 150B-51 (2001). In performing this task, the appellate court need only consider those grounds for reversal or modification raised by the petitioner before the superior court and properly assigned as error and argued on appeal to this Court.
 

 Id
 
 .;
 
 see also
 

 Bernold
 
 ,
 
 200 N.C. App. at 298
 
 ,
 
 683 S.E.2d at 430
 
 ("This Court's task when reviewing a superior court's order reviewing an administrative decision is simply to consider those grounds for reversal or modification raised by the petitioner before the superior court and properly assigned as error and argued on appeal to this Court.") (internal quotation marks and citations omitted).
 

 As detailed above, upon hearing the parties' summary judgment arguments and taking the summary judgment motion under advisement, the ALJ,
 
 sua sponte
 
 , converted the Department's and Permittees' motion for summary judgment into a Rule 41(b) motion for involuntary dismissal. The ALJ offered no explanation or support for converting the summary judgment motion into a Rule 41(b) motion in the order granting involuntary dismissal. In the Final Decision, the ALJ concluded the "renewed [m]otion for [s]ummary [j]udgment was, in essence, a request for involuntary dismissal pursuant to N.C. Gen. Stat. § 1A-1 Rule 41(b), and shall be so converted and [g]ranted as such." Upon review,
 
 *599
 
 we disagree with the ALJ's conclusion that the Department's and the Permittee's renewed summary judgment motion was, "in essence," a Rule 41(b) motion. Furthermore, because we are unable to find any authority for the conversion of a motion for summary judgment into a motion for involuntary dismissal, we hold the ALJ erred in this instance.
 

 Although both summary judgment and an involuntary dismissal at the close of Petitioners' evidence are adjudications on the merits,
 
 see
 
 N.C. Gen. Stat. § 1A-1, Rule 41(b) (2017), there are stark differences between the motions, including the standards to be applied in determining the motions.
 

 "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.' "
 
 Builders Mut. Ins. Co. v. North Main Constr., Ltd.
 
 ,
 
 361 N.C. 85
 
 , 88,
 
 637 S.E.2d 528
 
 , 530 (2006) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) ). "The purpose of [summary judgment] is not to allow the trial court to decide an issue of material fact, but to allow it to determine whether a genuine issue of material fact exists."
 
 Hiatt v. Burlington Industries, Inc.
 
 ,
 
 55 N.C. App. 523
 
 , 525,
 
 286 S.E.2d 566
 
 , 567 (1982). Because of the nature of the motion, "it is inappropriate for the trial court's order to contain detailed findings of fact and conclusions of law...."
 
 Good Neighbors of Oregon Hill Protecting Property Rights v. Cnty. of Rockingham
 
 ,
 
 242 N.C. App. 280
 
 , 288,
 
 774 S.E.2d 902
 
 , 908,
 
 appeal dismissed and disc. review denied
 
 ,
 
 368 N.C. 429
 
 ,
 
 778 S.E.2d 78
 
 (2015). Furthermore, "[i]n ruling on a motion for summary judgment, the trial court must review the record in the light most favorable to the party opposing the motion."
 
 Hiatt
 
 ,
 
 55 N.C. App. at 525
 
 ,
 
 286 S.E.2d at 567
 
 .
 

 On the other hand, Rule 41(b) provides that
 

 [a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).
 

 N.C. Gen. Stat. § 1A-1, Rule 41(b) (2017).
 

 *600
 
 On a motion to dismiss pursuant to Rule 41(b), the trial court is not to take the evidence in the light most favorable to plaintiff. Instead, the judge becomes both the judge and the jury and he must consider and weigh all competent evidence before him. The trial court must pass upon the
 
 *680
 
 credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from them.
 

 Hill v. Lassiter
 
 ,
 
 135 N.C. App. 515
 
 , 517,
 
 520 S.E.2d 797
 
 , 800 (1999) (internal citations and quotation marks omitted). "If the trial court grants a ... motion for involuntary dismissal, he must make findings of fact and failure to do so constitutes reversible error."
 
 Id
 
 .
 

 In this case, the Department and Permittees' renewed their motion for summary judgment made prior to the hearing. They did not move for an involuntary dismissal pursuant to Rule 41(b). Because of the stark differences in the motions, we hold it was improper for the ALJ to conflate the two motions and convert the renewed motion for summary judgment into a Rule 41(b) motion for an involuntary dismissal. There is no authority authorizing such conversion, especially where the ALJ acts
 
 sua sponte
 
 without providing the parties the opportunity to present additional arguments on Rule 41(b).
 

 While we recognize that the Rules of Civil Procedure apply in contested case hearings,
 
 see
 

 26 N.C. Admin. Code 3
 
 .0101(a) (2018), we have not found any cases where an ALJ has granted an involuntary dismissal pursuant to Rule 41(b) other than for failure to prosecute, failure to abide by a court order, failure to follow other rules, or for other procedural errors. Although we do not foreclose the possibility that dismissal may be appropriate in the clearest cases, we find no justification for the ALJ to make such a ruling on its own without providing the parties with a full and fair opportunity to address the motion under the appropriate standards of review.
 

 N.C. Gen. Stat. § 150B-25(c) provides that in a contested case, "[t]he parties shall be given an opportunity to present arguments on issues of law and policy and an opportunity to present evidence on issues of fact." N.C. Gen. Stat. § 150B-25(c) (2017). Given the unusual procedural posture of this case, the proper remedy upon reversal of the ALJ's grant of the involuntary dismissal is to remand the matter to the OAH to give the Department and Permittees the opportunity to present their evidence and defenses and to permit Petitioners to present any rebuttal to this evidence, including any expert testimony that may rebut the same.
 

 *601
 
 III.
 
 Conclusion
 

 The superior court erred by failing to recognize and apply the statutorily mandated standards of review, frustrating this Court's review of the Order. However, upon review of the record, we hold the ALJ erred in
 
 sua sponte
 
 converting the Department and Permittees' motion for summary judgment into a Rule 41(b) motion and granting the same. We remand the matter to the superior court for further remand to the OAH to allow the Department and Permittees the opportunity to present their case. At that time, Petitioners shall be permitted to offer any rebuttal evidence, including any expert testimony that rebuts the Department's and Permittees' contentions.
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 NCDEQ was formerly the N.C. Department of Environment and Natural Resources, but was renamed effective 18 September 2015.
 

 [2]
 

 The modified mining permits were issued to Green Meadow, while the structural fill permits were issued to both Charah and Green Meadow. One of each type of permit relates to each open pit mine.