IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-107

Filed 16 July 2024

Wake County, No. 23 CVS 5430-910

BRADLEY HOME, CARING FOR WAKE COMMUNITY AND THE CAROLINAS, INC. d/b/a/ BRADLEY HOME (MHL #092-319) and d/b/a BRADLEY HOME EXTENSION – KIMBERLY HOUSE (MHL #092-412), Petitioner,

v.

N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, MENTAL HEALTH LICENSURE AND CERTIFICATION SECTION, Respondent.

Appeal by Respondent from order entered 5 October 2023 by Judge Bryan Collins in Wake County Superior Court. Heard in the Court of Appeals 11 June 2024.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, PC., by Matthew W. Wolfe and E. Bahati Mutisya, for Petitioner-Appellee.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Kerry M. Boehm, for Respondent-Appellant.*

GRIFFIN, Judge.

Respondent North Carolina Department of Health and Human Services appeals from the Superior Court's order reversing and remanding an order of an Administrative Law Judge dismissing Petitioner Bradley Home's section 150B-23 petition for lack of subject-matter jurisdiction. DHHS argues North Carolina Rule of Civil Procedure 6(e), the Mailbox Rule, does not apply to extend the statutorily mandated sixty-day deadline for a party aggrieved by a State agency decision to file

a petition contesting that decision. We agree.

## I. Factual and Procedural Background

DHHS is a State agency tasked with the licensing and oversight of mental health care facilities operating within the State. Petitioner is licensed by DHHS to operate two mental health care facilities: (1) Bradley Home at Kelly Road in Garner, NC (Bradley Home) and (2) Bradley Home Extension - Kimberly House in Raleigh, NC (Kimberly House). In June 2021, after Petitioner submitted License Renewal Applications for both the Bradley Home and Kimberly House facilities, DHHS, pursuant to its authority under Chapter 122C of the North Carolina General Statutes, conducted surveys of both facilities. The surveys identified numerous violations of the North Carolina Administrative Code at both of Petitioner's facilities.

On 21 June 2021, DHHS notified Petitioner by certified mail that it was citing both facilities for these violations and imposed monetary penalties totaling $7,000. In each of the letters, DHHS notified Petitioner it had the right to contest the penalties by filing a petition for a contested case hearing with the Office of Administrative Hearings within thirty days from the date the letter was mailed. Accordingly, the deadline to contest the penalties was 21 July 2021.

On the same day that DHHS imposed the penalties, it also notified Petitioner via certified mail that it would be suspending admissions from both of Petitioner's facilities (collectively, the "SOA Letters"). For each SOA Letter, Petitioner had the right to contest the suspensions by filing a petition for a contested case hearing with

the OAH within twenty days from the date the letter was placed in the mail. Accordingly, the deadline to contest the SOA Letters was 11 July 2021.

Finally, and at issue here, on 3 August 2021, DHHS notified Petitioner by certified mail that it was revoking its licenses to operate its facilities. In each of the letters, DHHS notified Petitioner that under N.C. Gen. Stat. § 150B-23(f), it had the right to file petitions contesting the revocations within sixty days from the date the letter was mailed. Accordingly, the deadline to file the petitions was 4 October 2021.[1] On 5 October 2021, Petitioner filed a petition appealing the revocations and the other administrative actions.

Eight months later, on 3 June 2022, Petitioner—with DHHS's consent—filed a Consent Notice of Voluntary Dismissal Without Prejudice, allowing Petitioner "to re-file its contested case petition to include claims concerning the Revocation Notices, Suspension Notices, and Penalty Notices, and associated surveys." On 5 July 2022, Petitioner re-filed its petition with the OAH, challenging: (1) the 21 June 2021 penalties; (2) the 21 June 2021 suspensions of admission; and (3) the 3 August 2021 revocation of Petitioner's licenses to operate its facilities. DHHS moved to dismiss arguing that, because the petition was filed outside the respective specified time-periods for filing with regard to all three notices, the OAH lacked subject matter

---

[1] The initial deadline for filing the petition was 2 October 2021. However, as 2 October 2021 was a Saturday, the ALJ acknowledged Petitioner had until Monday, 4 October 2021, to file its petition. Regardless of this, Petitioner did not file its petition until 5 October 2021.

jurisdiction to hear the merits of the case. The ALJ agreed with DHHS and dismissed the petition regarding all three notices. Petitioner timely appealed to Wake County Superior Court, arguing that, under the Mailbox Rule, it had an extra three days to file the initial petition for a contested case hearing with the OAH.

The Superior Court held that Petitioner's initial petition, filed on 5 October 2021, was untimely as to the suspension of admissions and administrative penalties because the deadlines were 11 July 2021 and 21 July 2021, respectively. However, applying the Mailbox Rule, the Superior Court held that the petition contesting the license revocations was timely even though it was filed past the sixty-day deadline. The trial court concluded that the OAH had subject matter jurisdiction to hear the merits regarding the license revocations and reversed and remanded the decision to the OAH. DHHS timely appealed.

## II. Analysis

### A. Standard of Review

Chapter 150B of the North Carolina General Statutes, the North Carolina Administrative Procedure Act, "'governs trial and appellate court review of administrative agency decisions.'" *Harnett Cnty. Bd. of Educ. v. Ret. Sys. Div., Dep't of State Treasurer*, 291 N.C. App. 14, 19, 894 S.E.2d 275, 279 (2023) (quoting *Amanini v. N.C. Dep't of Hum. Res.*, 114 N.C. App. 668, 673, 443 S.E.2d 114, 117 (1994)). Pursuant to the APA, an aggrieved party may seek review of an ALJ's final decision by a superior court. *Id.*; *see also* N.C. Gen. Stat. § 150B-43 (2023). In this context,

the superior court sits in an appellate capacity and reviews errors of law de novo. *Bernold v. Bd. of Governors of Univ. of N.C.*, 200 N.C. App. 295, 297-298, 683 S.E.2d 428, 430 (2009) (citations and internal marks omitted); *see also* N.C. Gen. Stat. § 150B-51(b)–(c) (2023). Following an appeal of an ALJ's decision to a superior court, the APA affords litigants the right to "appeal from the superior court's final judgment to the appellate division." *EnvironmentaLEE v. N.C. Dep't of Env't and Nat'l Res.*, 258 N.C. App. 590, 595, 813 S.E.2d 673, 677 (2018); *see also* N.C. Gen. Stat. § 150B-52 (2023).

On review, we examine "the trial court's order for errors of law; this 'twofold task' involves: '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.'" *Hardee v. N.C. Bd. of Chiropractic Exam'rs*, 164 N.C. App. 628, 633, 596 S.E.2d 324, 328 (2004) (citation and internal marks omitted).

DHHS asks this Court to reverse the Superior Court's decision and affirm the ALJ's initial decision dismissing Petitioner's petition for lack of subject matter jurisdiction. Both the ALJ and Superior Court's decisions turn on whether the Mailbox Rule applies to extend the sixty-day filing deadline provided in section 150B-23(f). As the parties agree about when the pertinent filings were made, we address whether the Superior Court erred in reaching the conclusion of law that the Mailbox Rule applies.

**B. Superior Court Standard of Review**

The Superior Court reviewed the ALJ's order de novo. As the ALJ engaged in the statutory construction of section 150B-23(f) to determine the petition was untimely, de novo review was appropriate. *See Moore v. Proper*, 366 N.C. 25, 30, 726 S.E.2d 812, 817 (2012) ("[W]hen a trial court's determination relies on statutory interpretation, [appellate] review is de novo because those matters of statutory interpretation necessarily present questions of law.") (citation omitted). Having determined the Superior Court applied the correct standard of review, we now address whether its conclusions of law were proper.

## C. Conclusions of Law

The dispositive issue here is whether the Mailbox Rule applies to extend the section 150B-23(f) sixty-day period during which an aggrieved party may file a petition to contest a decision of an administrative agency. If it does not apply, then the petition was untimely and deprived the ALJ from having the necessary subject matter jurisdiction to adjudicate the case. *See Gray v. N.C. Dep't of Env't, Health & Hum. Res.*, 149 N.C. App. 374, 378, 560 S.E.2d 394, 397 (2002) ("[W]e agree that timely filing of a petition is necessary to confer subject matter jurisdiction on the agencies as well as the courts[.]") (citation omitted).

"'Statutory interpretation properly begins with an examination of the plain words of the statute.'" *Belmont Ass'n v. Farwig*, 381 N.C. 306, 310, 873 S.E.2d 486, 489 (quoting *Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992)). When interpreting the language of a statute, "[w]e presume that the

Legislature chose its words with due care and comprehension of their ordinary meaning." *C Invs. 2, LLC v. Auger*, 383 N.C. 1, 10, 881 S.E.2d 270, 278 (2022) (citation omitted). To this point, "it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *State v. Washington*, __ N.C. __, __, 900 S.E.2d 657, 659 (2024) (quoting *In re R.L.C.*, 361 N.C. 287, 292, 643 S.E.2d 920, 923 (2007)) (internal marks omitted). Moreover, where the language of a statute is clear, we do not "delete words used or [] insert words not used." *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) (citations and internal marks omitted).

Section 150B-23 of the APA codifies the process by which a party aggrieved by a State Agency decision may contest said decision. *See* N.C. Gen. Stat. § 150B-23(a) (2023). That process includes filing a petition with the Office of Administrative Hearings which specifies the grounds for the party's grievance. *Id.* Section 150B-23(f) provides the time limitation for filing a petition:

> Unless another statute or a federal statute or regulation sets a time limitation for the filing of a petition in contested cases against a specified agency, *the general limitation for the filing of a petition in a contested case is 60 days.* The time limitation, whether established by another statute, federal statute, or federal regulation, or this section, *commences* when notice is given of the agency decision to all persons aggrieved that are known to the agency by personal delivery, electronic delivery, *or by the placing of the notice in an official depository of the United States Postal Service wrapped in a wrapper addressed to the person at the latest address given by the person to the agency.* The notice shall be in writing, shall set forth the

- 7 -

> agency action, and shall inform the persons of the right, the procedure, and *the time limit to file a contested case petition.*

N.C. Gen. Stat. § 150B-23(f) (emphasis added). In construing the applicability of the section 150B-23(f) time limitation, we have held that "a petitioner is *deemed* to have notice of a final agency decision as soon as the agency places the decision in the mail, even if it takes several days for the petitioner to receive it." *Krishnan v. N.C. Dep't of Health & Hum. Servs.*, 274 N.C. App. 170, 173, 851 S.E.2d 431, 433 (2020) (citation omitted).

North Carolina Rule of Civil Procedure 6, on the other hand, provides the rules governing the computation of time limits in civil cases. *See* N.C. R. Civ. P. 6 (2023). Relevant here, Rule 6(e) provides that "[w]henever a party has the right to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period." N.C. R. Civ. P. 6(e) (2023). Rule 1 qualifies the applicability of the Rules to apply "in all actions and proceedings of a civil nature *except when a differing procedure is prescribed by statute.*" N.C. R. Civ. P. 1 (2023) (emphasis added).

Here, in reversing the Administrative Order, the Superior Court misapplied both the Mailbox Rule and our holding in *Smith v. Daniels Int'l.*, 64 N.C. App. 381, 307 S.E.2d 434 (1983). The order also misconstrues the plain and unambiguous

language of section 150B-23(f). Specifically, in its Conclusions of Law, the court concluded:

> 22.  Section 150B-23(f) does not provide for how the time period is to be calculated for purposes of the 60-day deadline.
>
> 23.  Section 150B-23(f) also does not indicate whether or not the computation of time differs depending on whether the Agency provides notice via personal delivery, electronic delivery, or by mail.
>
> 24.  The OAH Rules governing contested cases provide that "[u]nless otherwise provided in the rules of the Office of Administrative Hearings or in a specific statute, *time computations in contested cases before the Office of Administrative Hearings shall be governed by G.S. 1A-1, Rule 6.*" 26 NCAC 03.0116.
>
> . . .
>
> 27.  "Rule 6(e) was designed to 'alleviate the disparity between constructive and actual notice when the mailing of notice begins a designated period of time for the performance of some right.'" *Precision Fabrics Grp., Inc. v. Transformer Sales & Serv., Inc.*, 344 N.C. 713, 721, 477 S.E.2d 166, 170 (1996).
>
> 28.  The facts of this case illustrate the very reason the mailbox rule exists and must apply. The Agency mailed the Revocation Notices on August 3, 2021 but [Petitioner] received the Revocation Notices on August 10, 2021. Thus, the disparity of Petitioner's constructive and active notice exists here.
>
> 29.  N.C.G.S. § 150B-23(f) does not clarify whether the 60-day time period to appeal the mailed notice would commence on August 3, 2021 or August 10, 2021. Rule 6(e) provides the needed clarification by instructing the Agency and [Petitioner] to start the clock when the notice is placed in the mail and to add three days to the time period to

accommodate the inherent delay in receipt due to the mailing of the notice. Thus, when calculating the 60-day deadline to appeal the Revocation Notices, three days must be added, making the deadline October 5, 2021, the date Petitioner filed its Petition.

31.     The Rules of Civil Procedure apply in "all actions and proceedings of a civil nature except when a differing procedure is prescribed by statute." N.C.G.S. § 1A-1, 1. In *Smith v. Daniels International*, the Court of Appeals analyzed whether Rule 6(e) applied to the statutory 10-day time period in N.C.G.S. § 96-15(b)(2) for the complainant to appeal a notice of benefits disqualification. 64 N.C. App. 381, 383, 307 S.E.2d 434, 435 (1983). The claimant argued he had thirteen days under Rule 6(e) because the benefits disqualification notice was mailed to him. *Id.*, 307 S.E.2d at 435. However, N.C.G.S. § 96-15(b)(2), which prescribes the ten days, expressly stated that an appeal was untimely unless the claimant files the appeal "within [ten] days after notification of the conclusion of the adjudicator, *whether the conclusion be delivered manually or mailed." Id.* (emphasis in original). The Court relied on this italicized language to conclude that the complainant would have had thirteen days to appeal but for the language in the statute, which "clearly indicates legislative intent to establish 'a differing procedure' from that prescribed by G.S. 1A–1, Rule 6(e)." *Id.* Thus, the Court could not apply Rule 6(e) in that particular instance based solely on that specific language in the statute.

32.     There is no such language in N.C.G.S. § 150B-23(f) that would provide a differing procedure from Rule 6(e). Therefore, the default Mailbox Rule in Rule 6(e) applies, which gave Petitioner until October 5, 2021 to timely appeal the Revocation Notices.

As to Conclusions of Law 22 and 23, section 150B-23(f) states, in precise language, that the "general limitation for the filing of a petition in a contested case is 60 days." N.C. Gen. Stat. § 150B-23(f). The section clarifies that the sixty-day period

"commences when notice is given of the agency decision to all persons aggrieved that are known to the agency by personal delivery, electronic delivery, or by the placing of the notice in an official depository of the United States Postal Service[.]" *Id.* When read in harmony, it is apparent from the plain language that to calculate the sixty-day period, you begin counting from the day the notice is either personally or electronically delivered or when the notice is placed in the mail. The Superior Court's order unnecessarily reads ambiguity into the statute where there is none.

Conclusion of Law 23 does the same. Section 150B-23(f) specifies the time limitation "commences *when notice is given of the agency decision*[.]" *Id.* (emphasis added). Directly thereafter, the statute specifies three methods of permissible notification: personal delivery, electronic delivery, or by placing the notice in the care of the United States Postal Service. *Id.* As we "presume that the Legislature chose its words with due care[,]" *C Invs. 2*, 383 N.C. at 10, 881 S.E.2d at 278 (citation omitted), the choice to not make the time calculation contingent upon the method of notification reflects that the time calculation is the same regardless of the method used. Thus, as the statute plainly states, the sixty-day time limitation commences regardless of the method of delivery and is contrary to the assertion that it does not indicate a difference. Rather, it indicates there is no difference in time computation.

Conclusion of Law 24, while stating the law correctly, misconstrues the meaning of section 150B-23(f) as well as the applicability of 26 NCAC 03 .0116. 26 NCAC 03 .0116 provides that "time computations *in contested cases before* the Office

of Administrative Hearings shall be governed by G.S. 1A-1, Rule 6." 26 NCAC 03 .0116 (2024) (emphasis added). Section 150B-23(a) provides the method for initiating a contested case. It states that "[a] contested case *shall be commenced* by paying a fee in an amount established in G.S. 150B-23.2 and *by filing a petition with the Office of Administrative Hearings*[.]" N.C. Gen. Stat. § 150B-23(a) (2023). The plain meaning of the foregoing language indicates a contested case does not start until the filing of a petition. Because the "timely filing of a petition is necessary to confer subject matter jurisdiction on the agenc[y][,]" *Gray*, 149 N.C. App. at 378, 560 S.E.2d at 397, Rule 6 is inapplicable to time limitations effective prior to the commencement of the proceeding.

Conclusions of Law 27 and 28 disregard our precedent construing section 150B-23(f). In *Krishnan v. N.C. Department of Health & Human Services*, we interpreted the language of section 150B-23(f) to mean "a petitioner is *deemed* to have notice of a final agency decision as soon as the agency places the decision in the mail, even if it takes several days for the petitioner to receive it." *Krishnan*, 274 N.C. App. at 173, 851 S.E.2d at 433. Thus, the difference in a petitioner's actual and constructive notice of an agency's decision is immaterial for the purposes of filing a contested case petition under section 150B-23(f).

Conclusion of Law 29 also misapprehends section 150B-23(f). The conclusion that "N.C.G.S. § 150B-23(f) does not clarify whether the 60-day time period to appeal the mailed notice would commence on August 3, 2021 or August 10, 2021," is

erroneous. The plain language of section 150B-23(f) states that the general sixty-day limitation "*commences when* notice is given of the agency decision to all persons aggrieved . . . *by the placing of the notice in an official depository of the United States Postal Service* wrapped in a wrapper addressed to the person at the latest address given by the person to the agency." N.C. Gen. Stat. § 150B-23(f) (emphasis added). The time limitation commences when the agency places its notice in the mail. DHHS did so on 3 August 2021. Thus, the sixty-day time limit commenced on 3 August 2021. If Petitioner sought further clarification of the time limit, they need have referred only to the text of the revocation notice, as it stated below the 3 August 2021 mailing date that:

> You have the right to contest the above action by filing a petition for a contested case hearing with the Office of Administrative Hearings within sixty (60) days of mailing of this letter.
>
>  . . .
>
> If you do not file a petition within the sixty (60) day period, you lose your right to appeal and the action explained in this letter will become effective as described above.

Finally, Conclusion of Law 31 misconstrues our holding in *Smith v. Daniels International*. Initially, *Smith* addressed whether Rule 6 applies to section 96-15(b)(2), a statute providing the appeals process from the denial of unemployment benefits, not section 150B. *See Smith*, 64 N.C. App. at 434–35, 307 S.E.2d at 382; see N.C. Gen. Stat. § 96-15(b)(2) (2023). Nonetheless, as section 96-15(b)(2) and section

150B-23(f) govern the appeals of administrative decisions, we conclude *Smith* is persuasive here. There, we held the language "[u]nless the claimant . . . within 10 days after notification of the conclusion of the adjudicator, *whether the conclusion be delivered manually or mailed*, files an appeal to such conclusion, the conclusion shall be final and benefits paid or denied in accordance therewith[,]" to indicate a "legislative intent to establish 'a differing procedure' from that prescribed by G.S. 1A-1, Rule 6(e)." *Id*. at 383, 307 S.E.2d at 435. In fulfilling this intent, we held Rule 6(e) inapplicable to the section 96-15(b)(2) ten-day time limitation for filing an appeal. *Id*. at 382, 307 S.E.2d at 434–35.

As stated above, the Legislature did not provide for different time periods to apply depending on the method of delivery in section 150B-23(f). Rather, they listed the permissible methods of delivery immediately after stating the time limitation would commence upon the completion of any of them. This language is analogous to the dispositive language in *Smith* because neither statute provides for different time limitations contingent upon the method of delivery. Thus, utilizing the same reasoning we used in *Smith*, the language in section 150B-23(f) "indicates [a] legislative intent to establish 'a differing procedure' from that prescribed by G.S. 1A–1, Rule 6(e)." *Id.* at 383, 307 S.E.2d at 435.

Ultimately, the Superior Court utilized the correct standard of review when addressing the ALJ's order. However, as both our interpretation of section 150B-23(f) and our precedent counsel against applying Rule 6(e) to the sixty-day time limit, we

hold the Superior Court erred in reversing the ALJ's order. Accordingly, we reverse the Superior Court's order and remand to the Superior Court for further remand to the ALJ for entry of dismissal.

### III.    Conclusion

For the aforementioned reasons, we reverse the Superior Court's decision and remand for dismissal.

REVERSED AND REMANDED.

Judge ZACHARY concurs.

Judge TYSON dissents by separate opinion.

No. COA24-107 – *Bradley Home v. N.C. Dep't of Health & Hum. Servs.*

TYSON, Judge, dissenting.

The Superior Court properly applied the Mailbox Rule and held the petition contesting the license revocation was timely filed when adding the statutorily mandated three additional days to the date the agency purportedly placed the notice in the mail. N.C. R. Civ. P. 6(e) (2023). The Superior Court properly concluded, due to Petitioner's timely notice, the Office of Administrative Hearings ("OAH") possessed subject matter jurisdiction to hear the merits regarding the license revocations, reversed the OAH's decision, and remanded the matter to the OAH. I vote to affirm the Superior Court's decision and respectfully dissent.

## IV.    N.C. R. Civ. P. 6(e)

Rule 6 of the North Carolina Rules of Civil Procedure is the default rule of general applicability regarding the computation of time limits in civil proceedings. *See* N.C. R. Civ. P. 6(e). "Whenever a party has the right to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him *and the notice or paper is served upon him by mail, three days shall be added to the prescribed period.*" *Id.* (emphasis supplied). "Rule 6(e) was designed to 'alleviate the disparity between constructive and actual notice when the mailing of notice begins a designated period of time for the performance of some right.'" *Precision Fabrics Grp. v. Transformer Sales & Serv.,* 344 N.C. 713, 721, 477 S.E.2d 166, 170 (1996) (citation omitted).

Rule 1 qualifies the applicability of the Rules of Civil Procedure and explains the Rules apply "in all actions and proceedings of a civil nature *except when a differing procedure is prescribed by statute*." N.C. R. Civ. P. 1 (2023) (emphasis supplied).

## V.    N.C. Gen. Stat. § 150B-23(f)

N.C. Gen. Stat. § 150B-23(f) provides the time limitation for filing a petition:

> Unless another statute or a federal statute or regulation sets a time limitation for the filing of a petition in contested cases against a specified agency, *the general limitation for the filing of a petition in a contested case is 60 days*. The time limitation, whether established by another statute, federal statute, or federal regulation, or this section, *commences* when notice is given of the agency decision to all persons aggrieved that are known to the agency by personal delivery, electronic delivery, *or by the placing of the notice in an official depository of the United States Postal Service wrapped in a wrapper addressed to the person at the latest address given by the person to the agency*. The notice shall be in writing, shall set forth the agency action, and shall inform the persons of the right, the procedure, and the time limit to file a contested case petition.

N.C. Gen. Stat. § 150B-23(f) (2023) (emphasis supplied).

## VI.    *In Pari Materia*

"Statutes *in pari materia* are to be construed together, and it is a general rule that courts must harmonize such statutes, if possible, and give effect to each[.]" *Town of Blowing Rock v. Gregorie*, 243 N.C. 364, 371, 90 S.E.2d 898, 904 (1956). "[I]t is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used." *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297,

2

301 (2014). This Court presumes the General Assembly "chose its words with due care and comprehension of their ordinary meaning." *C Invs. 2, LLC v. Auger*, 383 N.C. 1, 10, 881 S.E.2d 270, 278 (2022) (citation omitted). A provision of a statute cannot be read "in a way that renders another provision of the same statute meaningless." *State v. Daw*, 277 N.C. App. 240, 254, 860 S.E.2d 1, 12 (2021).

N.C. Gen. Stat. § 150B-23(f) establishes the "general [time] limitation" to file a petition at sixty days, unless superseded by another statute or regulation. It then notes "the time limitation" commences when the notice is placed in the mail. *Id.*

Contrary to the majority's assertion, this statute is not incompatible with Rule 6(e), and the two statutes are simultaneously applied. The word "general" implies exceptions exist to any sixty-day, absolute deadline established by § 150B-23(f). Interpreting the sixty-day limitation as a hard deadline fails to give effect to the word "general" in the statute. Rather, the section of the statute only clarifies the time limitation commences on the date the notice was mailed. It does not apply the general sixty-day limitation to mailed petitions, because Rule 6(e) applies to notices delivered by mail to extend the time limitation for up to three additional days. N.C. R. Civ. P. 6(e).

The majority's opinion references *Smith v. Daniels Int'l*, which held Rule 6(e) did not apply to the statutory time limitation for appeals from the Employment Security Commission. 64 N.C. App. 381, 383, 307 S.E.2d 434, 435 (1983). This case and facts are inapposite and distinguishable from those in *Smith*, in which the

3

applicable statute imposed a hard ten-day time limitation regardless of "whether the conclusion [was] delivered manually *or* mailed." *Id.* The use of the disjunctive "or" precluded the Mailbox Rule in Rule 6(e). *See id.* The language in *Smith* clearly demonstrated a legislative intent separate and distinct to create a uniform time limitation, regardless of delivery method the agency used, and established a different procedure from that set out in the North Carolina Administrative Procedure Act ("NCAPA"), N.C. Gen. Stat. §§ 150B-1 to 52 (2023), and Rule 6(e).

Here, the relevant NCAPA statute sets out a "general" time limitation and sets the commencement, but it does not assert the "general" time limitation is to be applied in all cases. *See* N.C. Gen. Stat. § 150B-23(f). As the Superior Court properly concluded, nothing "clearly indicates legislative intent to establish 'a differing procedure' from that prescribed by G.S. 1A-1, Rule 6(e)." *Smith*, 64 N.C. App. at 383, 307 S.E.2d at 435. The two statutes are properly read *in pari materia,* and Rule 6(e) applies to notices delivered by mail. N.C. R. Civ. P. 6(e).

### VII. Contested Case

In addition, 26 NCAC 03 .0116 provides "time computations in contested cases before the Office of Administrative Hearings *shall be governed by G.S. 1A-1, Rule 6.*" 26 NCAC 03 .0116. (emphasis supplied). N.C. Gen. Stat. § 150B-23(a), provides the method for initiating a "contested case."

The majority's opinion cites N.C. Gen. Stat. § 150B-23(a), which states "[a] contested case shall be commenced by paying a fee in an amount established in G.S.

4

150B-23.2 and by filing a petition with the Office of Administrative Hearings[.]" The majority's opinion then asserts the plain meaning of N.C. Gen. Stat. § 150B-23(a) "indicates a contested case does not start until the filing of a petition."

Another section of the same NCAPA chapter, however, defines a "contested case" as "an administrative proceeding pursuant to this Chapter to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing or the levy of a monetary penalty." N.C. Gen. Stat. § 150B-2(2) (2023). Our Supreme Court held a "contested case" has two main elements: "(1) an agency proceeding, (2) that determines the rights of a party or parties." *Lloyd v. Babb*, 296 N.C. 416, 424-25, 251 S.E.2d 843, 850 (1979).

This Court, citing *Lloyd,* held "the pivotal question in determining whether [a matter] is a "contested case," is whether the [agency's actions] and investigation constitute[d] an agency proceeding." *Charlotte Truck Driver Training School, Inc. v. N.C. DMV*, 95 N.C. App. 209, 212, 381 S.E.2d 861, 863 (1989) (citing *id.*).

In *Charlotte Truck Driver*, the petitioner's license was revoked following an interview and investigation by the Department of Motor Vehicles. *Id.* at 212, 381 S.E.2d at 862-63. This Court held the investigative actions conducted by the Department of Motor Vehicles, a government agency, and the subsequent revocation of a license constituted an "agency proceeding" and the matter was a "contested case." *Id.*

The North Carolina Department of Health and Human Services ("NC DHHS")

5

aggressively suspended admissions to petitioner's facilities, imposed a $7,000 fine, and revoked the petitioner's licenses, following a survey of petitioner's facilities. As occurred in *Charlotte Truck Driver*, NC DHHS conducted an investigation into petitioner's facilities and initiated an "agency proceeding." *Id.* ("As the in-person interview and the investigation were conducted by a hearing officer of the North Carolina Division of Motor Vehicles, a State agency, we conclude that they constitute 'an agency proceeding.'").

The revocation of petitioner's license following their agency investigatory action also determined the rights of petitioner. *See id.* NC DHHS conducted an investigation, after which the petitioner's rights were determined, meeting the definition of a "contested case" as outlined in *Lloyd*. *Id.* (citing *Lloyd*, 296 N.C. at 424-25, 251 S.E.2d at 850).

NC DHHS' actions taken against petitioner constitute a "contested case" and 26 NCAC 03 .0116 applies. Because 26 NCAC 03 .0116 applies, the three-day extension was properly "added to the prescribed period" of time for petitioner to timely file his appeal to the OAH. N.C. R. Civ. P. 6(e).

The matter before us can be fairly categorized as a "contested case," and is governed by N.C. Gen. Stat. § 1A-1, Rule 6. 26 NCAC 03 .0116 (providing "time computations in contested cases before the Office of Administrative Hearings shall be governed by G.S. 1A-1, Rule 6."). The Superior Court correctly held the petition contesting the license revocation was timely filed by adding the statutory three

additional days to the sixty days after the agency placed the notice in the mail. *See id.*; N.C. R. Civ. P. 6(e); *Charlotte Truck Driver*, 95 N.C. App. at 212, 381 S.E.2d at 862-63; *Lloyd*, 296 N.C. at 424-25, 251 S.E.2d at 850.

### VIII.    Trial Court's Conclusions of Law

The trial court's Conclusions of Law correctly state, in part:

> 22.    Section 150B-23(f) does not provide for how the time period is to be calculated for purposes of the 60-day deadline.
>
> 23.    Section 150B-23(f) also does not indicate whether or not the computation of time differs depending on whether the Agency provides notice via personal delivery, electronic delivery, or by mail.
>
> 24.    The OAH Rules governing contested cases provide that "[u]nless otherwise provided in the rules of the Office of Administrative Hearings or in a specific statute, *time computations in contested cases before the Office of Administrative Hearings shall be governed by G.S. 1A-1, Rule 6.*" 26 NCAC 03 .0116.
>
> . . .
>
> 27.    "Rule 6(e) was designed to 'alleviate the disparity between constructive and actual notice when the mailing of notice begins a designated period of time for the performance of some right.'" *Precision Fabrics Grp., Inc. v. Transformer Sales & Serv., Inc.*, 344 N.C. 713, 721, 477 S.E.2d 166, 170 (1996).
>
> 28.    The facts of this case illustrate the very reason the mailbox rule exists and must apply. The Agency mailed the Revocation Notices on August 10, 2021. Thus, the disparity of Petitioner's constructive and actual notice exists here.
>
> 29.    N.C.G.S. § 150B-23(f) does not clarify whether the

60-day time period to appeal the mailed notice would commence on August 3, 2021[,] or August 10, 2021. Rule 6(e) provides the needed clarification by instructing the Agency and Bradley Home to start the clock when the notice is placed in the mail and to add three days to the time period to accommodate the inherent delay in receipt due to the mailing of the notice. Thus, when calculating the 60-day deadline to appeal the Revocation Notices, three days must be added, making the deadline October 5, 2021, the date Petitioner filed its Petition.

31.     The Rules of Civil Procedure apply in "all actions and proceedings of a civil nature except when a differing procedure is prescribed by statute." N.C.G.S. § 1A-1, 1. In *Smith v. Daniels International*, the Court of Appeals analyzed whether Rule 6(e) applied to the statutory 10-day time period in N.C.G.S. § 96-15(b)(2) for the complainant to appeal a notice of benefits disqualification. 64 N.C. App. 381, 383, 307 S.E.2d 434, 435 (1983). The claimant argued he had thirteen days under Rule 6(e) because the benefits disqualification notice was mailed to him. *Id.*, 307 S.E.2d at 435. However, N.C.G.S. § 96-15(b)(2), which prescribes the ten days, expressly stated that an appeal was untimely unless the claimant files the appeal "within [ten] days after notification of the conclusion of the adjudicator, *whether the conclusion be delivered manually or mailed." Id.* (emphasis in original). The Court relied on this italicized language to conclude that the complainant would have had thirteen days to appeal but for the language in the statute, which "clearly indicates legislative intent to establish 'a differing procedure' from that prescribed by G.S. 1A–1, Rule 6(e)." *Id.* Thus, the Court could not apply Rule 6(e) in that particular instance based solely on that specific language in the statute.

32.     There is no such language in N.C.G.S. § 150B-23(f) that would provide a differing procedure from Rule 6(e). Therefore, the default Mailbox Rule in Rule 6(e) applies, which gave [Bradley Home] until October 5, 2021[,] to timely appeal the Revocation Notices.

NC DHHS has shown nothing inconsistent or ambiguous about either statute or error in reading both *in pari materia*. *See Brown v. Flowe*, 349 N.C. 520, 523-24, 507 S.E.2d 894, 896 (1998) ("When multiple statutes address a single subject, this Court construes them *in pari materia* to determine and effectuate the legislative intent."). Consistent with both statutes and applying both equally, the OAH Rules governing contested cases provide: ". . . time computations in contested cases before the Office of Administrative Hearings shall be governed by G.S. 1A-1, Rule 6." 26 NCAC 03 .0116.

## IX. Conclusion

NC DHHS has shown nothing inconsistent or ambiguous about either statute, both have equal dignity, and are properly read *in pari materia*. Both are applicable where the agency chose to provide required notice by mail. NC DHHS has also shown no reversible error or prejudice in the Superior Court's order.

We all agree the Superior Court utilized the correct standard of review when addressing the ALJ's order. Petitioner's timely notice under the statutes and Rules invoked OAH's subject matter jurisdiction to hear the merits challenging Petitioner's license revocations. The trial court's order is properly affirmed. I respectfully dissent.